**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| LINEWEIGHT, LLC and ) | |
| CRYE PRECISION, LLC ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 2:14-cv-00657-MSD-LRL |
| v. ) | |
| ) | |
| READYONE INDUSTRIES, INC., ) | |
| ) | |
| Defendant. ) | |

### ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Defendant ReadyOne Industries, Inc. ("ReadyOne"), by and through its attorneys, K&L

Gates LLP, files this Answer and Affirmative Defenses to the Complaint filed by Plaintiffs

LineWeight, LLC ("LineWeight") and Crye Precision, LLC  ("Crye") (collectively, "Plaintiffs").

In addition, ReadyOne files the Counterclaims set forth below.

### NATURE OF THE ACTION

1.      ReadyOne admits that Plaintiffs have styled their action as one for patent

infringement and pre-issuance infringement of U.S. Patent Nos. 7,237,270 ("the '270 Patent")

and 8,621,666 ("the '666 Patent") (collectively "the patents in suit").  Except as expressly so

admitted, ReadyOne denies the allegations of paragraph 1 in the Complaint.

### THE PARTIES

2.      ReadyOne is without knowledge or information sufficient to form a belief about

the truth of the allegations set forth in Paragraph 2 of the Complaint, and on that basis denies

them.

3.      ReadyOne is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 3 of the Complaint, and on that basis denies them.

4.      Denied.  Defendant ReadyOne Industries is a Texas 501(c)(3) nonprofit corporation with a principal place of business at 1414 Ability Drive, El Paso, TX 79936-6415.

## JURISDICTION AND VENUE

5.      ReadyOne admits the general proposition that 28 U.S.C. §§ 1331 and 1338(a) confers on district courts original jurisdiction over matters arising under any Act of Congress relating to patents.

6.      ReadyOne admits that it has transacted business within this judicial district.

7.      ReadyOne does not object to venue in this judicial district.

## THE PATENTS IN SUIT

8.      ReadyOne admits that the '270 Patent is entitled "Removable Garment Protective Assembly" and that a copy of that patent is attached to the Complaint.  Except as expressly so admitted, ReadyOne denies the other allegations of Paragraph 8 of the Complaint.

9.      ReadyOne admits that the '666 Patent is entitled "Removable Garment Protective Assembly" and that a copy of that patent is attached to the Complaint.  Except as expressly so admitted, ReadyOne denies the other allegations of Paragraph 9 of the Complaint.

10.     ReadyOne is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 10 of the Complaint, and on that basis denies them.

## STATEMENT OF FACTS

11.     ReadyOne is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 11 of the Complaint, and on that basis denies them.

12.     ReadyOne is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 12 of the Complaint, and on that basis denies them.

13.     ReadyOne admits that it manufactures, causes to be manufactured, uses, offers to sell, sells, and/or supplies or causes to be supplied from within the United States combat pants which allow for the insertion of knee pads to the U.S. military.  Indeed, ReadyOne's only customer for such combat pants is the United States military.  Except as expressly so admitted, ReadyOne denies the remaining allegations of Paragraph 13 of the Complaint.  Among other things, "Products" as defined in paragraph 13 of the Complaint and used herein is misleading because it is not coextensive with the patent claims of either the '270 Patent or the '666 Patent, because the patents require, among other things, the combination of both the pants and the inserted kneepads.  Therefore, merely manufacturing, using, selling, offering to sell, and/or supplying or causing to be supplied "the Products" (*i.e.*, the pants alone) is not manufacturing, using, offering for sale, selling, importing and/or supplying or causing to be supplied articles covered by either of the patents in suit.

14.     ReadyOne admits that in 2013 ReadyOne offered to sell the U.S. Army "Products" (*i.e.*, "combat pants which allow for the insertion of knee pads," as defined in Paragraph 13 of the Complaint).

15.     ReadyOne admits that the quotations from ReadyOne's website and LinkedIn page appear to be cited accurately, and that Exhibits E and F to Plaintiffs' Complaint appear to be copies of the newspaper report and press release referenced in paragraph 15.  Except as expressly so admitted, ReadyOne denies the allegations of paragraph 15 of the Complaint.  ReadyOne's only customer for combat pants is the United States military.

16.     ReadyOne admits that on March 18, 2013, Crye sent to ReadyOne the letter attached to the Complaint as Exhibit G.  Except as expressly so admitted, ReadyOne denies the allegations of paragraph 16.

17.     ReadyOne admits the allegations of Paragraph 17 of the Complaint.

18.     ReadyOne admits that, following its receipt of the March 18, 2013 letter, Crye has continued to communicate with ReadyOne on the topic of Crye's views concerning alleged infringement.  Except as expressly so admitted, ReadyOne denies the remaining allegations of Paragraph 18 of the Complaint.

19.     ReadyOne admits that since March 18, 2013, it has continued to manufacture and sell "products" in the United States (assuming "products" in Paragraph 19 of the Complaint has the same meaning as defined in Paragraph 13 of the Complaint).  Except as expressly so admitted, ReadyOne denies the allegations of paragraph 19 of the Complaint.

20.     ReadyOne admits that its sales of "the Products" have generated revenue.  Except as expressly so admitted, ReadyOne denies the allegations of paragraph 20 of the Complaint.

21.     ReadyOne denies the allegations of Paragraph 21 of the Complaint.

**DAMAGES**

22.     ReadyOne denies the allegations of Paragraph 22 of the Complaint.

23.     ReadyOne denies the allegations of Paragraph 23 of the Complaint.

24.     ReadyOne admits that Plaintiffs seek the types of damages set forth in paragraph 24 of the Complaint.  Except as expressly so admitted, ReadyOne denies the allegations of Paragraph 24 of the Complaint.

25.     ReadyOne admits that Plaintiffs have made the request set forth in paragraph 25 of the Complaint.  Except as expressly so admitted, ReadyOne denies the allegations of Paragraph 25 of the Complaint.

## COUNT I

## ALLEGED PATENT INFRINGEMENT

26.     ReadyOne incorporates its responses to paragraphs 1 through 25 of the Complaint as if fully set forth herein.

27.     ReadyOne admits the general proposition that patent infringement claims arise under 35 U.S.C. § 271.  Except as expressly so admitted, ReadyOne denies the allegations of paragraph 27 of the Complaint.

28.     ReadyOne denies the allegations of Paragraph 28 of the Complaint.

29.     ReadyOne denies the allegations of Paragraph 29 of the Complaint.

30.     ReadyOne denies the allegations of Paragraph 30 of the Complaint.

31.     ReadyOne denies the allegations of Paragraph 31 of the Complaint.

32.     ReadyOne denies the allegations of Paragraph 32 of the Complaint.

33.     ReadyOne denies the allegations of Paragraph 33 of the Complaint.

## COUNT II

## ALLEGED PRE-ISSUANCE INFRINGEMENT OF PUBLISHED PATENT APPLICATION

34.     ReadyOne incorporates its responses to paragraphs 1 through 33 of the Complaint as if fully set forth herein.

35.     ReadyOne admits the general proposition that pre-issuance patent infringement claims arise under 35 U.S.C. § 154.  Except as expressly so admitted, ReadyOne denies the allegations of paragraph 35 of the Complaint.

36.     ReadyOne denies the allegations of paragraph 36 of the Complaint.

37.     ReadyOne denies the allegations of paragraph 37 of the Complaint.

38.     ReadyOne denies the allegations of paragraph 38 of the Complaint.

## JURY TRIAL DEMAND

39.     ReadyOne admits that Plaintiffs have demanded a jury trial on all issues that are properly triable before a jury.

## AFFIRMATIVE DEFENSES

Subject to the responses above, and without conceding that any of the following defenses must necessarily be pled or that any such defenses are not already at issue by virtue of the foregoing denials, ReadyOne asserts the following affirmative defenses.  ReadyOne undertakes the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are categorized herein.  In addition to the affirmative and other defenses described below, ReadyOne reserves the right to amend this Answer and these Affirmative Defenses as additional information is obtained.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

Plaintiffs' Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Noninfringement)

ReadyOne has not directly infringed, indirectly infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claims of the '270 and '666 Patents, either literally or under the doctrine of equivalents, and it has not otherwise committed any acts in violation of 35 U.S.C. § 271.

## THIRD AFFIRMATIVE DEFENSE
### (Invalidity)

The claims of the '270 and '666 Patents are invalid for failure to meet the statutory requirements of Title 35 of the United States Code, including, but not limited to, failure to comply with the requirements of 35 U.S.C. §§ 102, 103 and/or 112.

## FOURTH AFFIRMATIVE DEFENSE
### (Inequitable Conduct)

The '270 Patent is unenforceable due to inequitable conduct.  The factual basis supporting this affirmative defense is set forth in paragraphs 98 to 129 below.

## FIFTH AFFIRMATIVE DEFENSE
### (28 U.S.C. § 1498(a))

Plaintiffs' claims for relief are barred, in whole or in part, by the provisions of 28 U.S.C. § 1498(a), which effects an assumption of liability by the United States Government and immunizes United States Government contractors, such as ReadyOne, from any and all liability for using or manufacturing a patented invention, including selling or offering for sale such invention, for the United States government.  Pursuant to Section 1498(a), a patentee's sole and exclusive remedy in such cases is to file an action against the United States--not the government contractor--in the United States Court of Federal Claims.

## SIXTH AFFIRMATIVE DEFENSE
### (Patent Exhaustion)

Plaintiffs' claims for relief are barred, in whole or in part, by the doctrine of patent exhaustion.  ReadyOne has purchased knee pads from Crye that have no other viable and reasonable uses other than for incorporation into garments which require practicing the '270 and '666 Patents, and the knee pads are essential features of the patents in suit.

## SEVENTH AFFIRMATIVE DEFENSE
### (Failure to Mark)

Plaintiffs' claims for relief are barred, in whole or in part, by its failure to meet the requirements of 35 U.S.C. § 287.

## EIGHTH AFFIRMATIVE DEFENSE
### (No Pre-Issuance Damages for '666 Patent)

Plaintiffs' claims for relief for pre-issuance damages for the '666 Patent are barred, in whole or in part, under the provisions of 35 U.S.C. § 154.  Among other things, "the invention as claimed" in the '666 Patent is not "substantially identical to the invention as claimed in the published patent application" for the '666 Patent.  The '666 Patent contains only two independent claims, and they were added to the application for the '666 Patent after the '666 Patent application was published.  Further, the two independent claims in the '666 Patent include substantive claim limitations that are not found in any of the claims in the published application for the '666 Patent.

## NINTH AFFIRMATIVE DEFENSE
### (Laches)

Plaintiffs' claims for relief are barred, in whole or in part, by the doctrine of laches.

## TENTH AFFIRMATIVE DEFENSE
### (Reservation of Defenses)

Defendant hereby gives notice that it intends to rely on any other defense and assert any counterclaim that may hereafter become available or appear during any discovery proceeding or otherwise in this case and hereby reserves its right to amend its Answer and Affirmative Defenses and/or to assert counterclaims accordingly.

## COUNTERCLAIMS

ReadyOne asserts counterclaims against Plaintiffs as follows:

## NATURE OF THE ACTION

1.       This is an action for declaratory judgments under 28 U.S.C. §§ 2201 and 2202 of non-infringement and no liability for infringement of United States Patent Numbers 7,237,270 and 8,621,666, and for declaratory judgment of unenforceability of the '270 Patent.  This action arises under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*

## PARTIES

2.       Counterclaim plaintiff ReadyOne is a Texas 501(c)(3) nonprofit corporation with a principal place of business at 1414 Ability Drive, El Paso, TX 79936-6415.

3.       Upon information and belief, counterclaim defendant Crye is a New York limited liability company with a principal place of business at Brooklyn Navy Yard, 63 Flushing Ave., Unit 252, Brooklyn, New York 11205.

4.       Upon information and belief, counterclaim defendant LineWeight is a New York limited liability company with a principal place of business at Brooklyn Navy Yard, 63 Flushing Ave., Unit 252, Brooklyn, New York 11205.

## JURISDICTION AND VENUE

5.      This is an action based upon and arising under the patent laws of the United States 35 U.S.C. §§ 100 *et seq.*

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 2201.

7.      This Court has personal jurisdiction over the Counterclaim Defendants because, among other things, the Counterclaim Defendants voluntarily consented to personal jurisdiction by filing their Complaint in this Court.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)-(c) at least because the Counterclaim Defendants submitted to personal jurisdiction within this judicial district.

## COUNT I

### DECLARATORY JUDGMENT OF NO INFRINGEMENT BECAUSE READYONE'S PURCHASE OF KNEE PADS FROM CRYE EXHAUSTS THE '270 AND '666 PATENTS

9.      ReadyOne repeats and re-alleges Paragraphs 1 through 8 above as if fully set forth herein.

10.     Since 2009, ReadyOne has entered into contracts with the United States Army ("Government Contracts") for the supply of so-called "Army Combat Pants" (ACP) and "Style 19125 PCU Level 9" combat pants.

11.     ReadyOne supplies the U.S. Government with ACP and Style 19125 PCU Level 9 combat pants and Crye's AirFlex$^{TM}$ knee pads that can be worn with the ACP and Style 19125 PCU Level 9 combat pants, as the case may be.

12.     ReadyOne has not sold Crye's AirFlex™ knee pads to customers other than the U.S. Government.

13.     ReadyOne has purchased from Crye knee pads that ReadyOne supplied to the U.S. Government.

14.     Since 2009, ReadyOne has ordered over 210,000 sets of Crye AirFlex™ knee pads from Crye.

15.     Since 2009, ReadyOne has received from Crye over 180,000 sets of Crye AirFlex™ knee pads.

16.     Since 2009, ReadyOne has ordered over $4,500,000 worth of Crye AirFlex™ knee pads from Crye.

17.     Plaintiffs are accusing ReadyOne of patent infringement because ReadyOne supplies the U.S. Government with combat pants and Crye AirFlex$^{TM}$ knee pads.

18.     Exhibit A is a true and correct copy of an April 1, 2014 letter sent by Crye's and LineWeight's general counsel, Mr. Jonathan E. Antone, to ReadyOne's outside counsel.

19.     Mr. Antone's April 1, 2014 letter (Ex. A) states in part: "… a review of Crye's internal records has revealed that during the 2012-2013 calendar years, ReadyOne purchased over one-hundred thousand (100,000) sets of AirFlex$^{TM}$ Combat Knee Pads from Crye Precision."

20.     Mr. Antone's statement in his April 1, 2014 letter (Ex. A) that "a review of Crye's internal records has revealed that during the 2012-2013 calendar years, ReadyOne purchased over one-hundred thousand (100,000) sets of AirFlex$^{TM}$ Combat Knee Pads from Crye Precision" is true.

21.     ReadyOne purchased all the knee pads that it supplied to the U.S. Government from Crye.

22.     Ex. B is a true and correct copy of "Installation Instructions" for Crye's AirFlex Series combat kneepads available on Crye's website at the following URL: www.cryeprecision.com/Resources/en/Manuals/CryePrecision_Airflex_Combat_Kneepad_Manual(Web).pdf.

23.     Crye's website, as of January 28, 2015, does not provide any installation instructions for the AirFlex Series combat kneepads other than what is disclosed in Ex B.

24.     In the April 1, 2014 letter at Ex.  A, Crye's and LineWeight's General Counsel, Mr. Antone, stated in part: "Crye's AirFlex$^{TM}$ knee pads have no viable use other than for incorporation into a garment which requires practicing on the '270 Patent."

25.     Mr. Antone's statement that "Crye's AirFlex$^{TM}$ knee pads have no viable use other than for incorporation into a garment which requires practicing on the '270 patent" in Exhibit A is true.

26.     At all relevant times, Crye had authority from LineWeight to sell AirFlex$^{TM}$ knee pads to ReadyOne under the '270 and '666 Patents.

27.     At all relevant times, ReadyOne's purchase of AirFlex$^{TM}$ knee pads from Crye was lawful and with authorization from Crye.

28.     ReadyOne's outside counsel informed Mr. Antone several times in writing, including at least in two letters dated April 10, 2014 and June 16, 2014 respectively, that Crye's rights in the patents in suit are exhausted when Crye sells to ReadyOne knee pads that have no reasonable uses other than for incorporation into garments that require practicing the '270 and '666 patents.

29.     There is an actual, substantial, and continuing justiciable controversy between ReadyOne and the Counterclaim Defendants regarding whether the doctrine of patent exhaustion

bars the Counterclaim Defendants' infringement claims against ReadyOne for infringement of the '270 and '666 Patents to the extent that they relate to knee pads sold by Crye to ReadyOne.

30.     ReadyOne therefore respectfully requests that this Court enter a declaratory judgment declaring that the Counterclaim Defendants' rights in the '270 and '666 Patents are exhausted at least with respect to knee pads that ReadyOne purchased from Crye.

## COUNT II

### DECLARATORY JUDGMENT OF NO LIABILITY FOR INFRINGEMENT OF THE '270 AND '666 PATENTS FOR PRODUCTS FOR THE U.S. GOVERNMENT UNDER 28 U.S.C. § 1498(a)

31.     ReadyOne repeats and re-alleges Counterclaim Paragraphs 1 through 30 above as if fully set forth herein.

32.     Pursuant to the Government Contracts, ReadyOne supplies the U.S. Government with ACP and Style 19125 PCU Level 9 combat pants and Crye AirFlexTM knee pads that can be worn with the ACP and Style 19125 PCU Level 9 combat pants, as the case may be.

33.     ReadyOne manufactured, caused to be manufactured, used, offered to sell, sold, imported, and/or supplied or caused to be supplied ACP and  Style 19125 PCU Level 9 combat pants, and/or Crye's AirFlex$^{TM}$ knee pads, for the United States Government with its authorization and consent.

34.     Pursuant to 28 U.S.C. § 1498(a), the United States Government assumes all liability whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license or lawful right of use.  It also, thereby, relieves ReadyOne entirely from liability for alleged patent infringement when acting by and for the United States.

35.     Pursuant to 28 U.S.C. § 1498(a), Plaintiffs' sole and exclusive remedy, if any, for ReadyOne's performance of the Government Contracts is against the United States in the United States Court of Federal Claims.

36.     ReadyOne's outside counsel informed Crye's outside counsel in writing, including at least a letter dated September 16, 2014, that by statute (28 U.S.C. § 1498(a)), Crye's only remedy for alleged infringement of the patents in suit for ReadyOne's activities under its Government Contracts is against the United States in the United States Court of Federal Claims.

37.     There is an actual, substantial, and continuing justiciable controversy between ReadyOne and the Counterclaim Defendants regarding whether the Counterclaim Defendants' sole remedy for ReadyOne's performance under its Government Contracts is against the United States in the United States Court of Federal Claims.

38.     With respect to all of its sales to the U. S. Government, ReadyOne seeks and is entitled to a declaration that pursuant to 28 U.S.C. § 1498(a): (i) the United States assumed the sole and exclusive liability for the alleged patent infringement of the '270 Patent and '666 Patent, if any, resulting from the manufacture, use, offer to sell, sale and/or supply of ACP and PCU Level 9 combat pants, and Crye's AirFlex$^{TM}$ knee pads, to the United States Government, (ii) ReadyOne is immune from liability resulting from performance of the Government Contracts, as a result, and (iii) Plaintiffs' sole recourse for any patent infringement claims resulting from the performance of the Government Contracts is against the United States Government in the United States Court of Federal Claims.

## COUNT III

### DECLARATORY JUDGMENT OF NO INFRINGEMENT OF THE '270 AND '666 PATENTS FOR PRODUCTS MADE FOR THE U.S. GOVERNMENT BECAUSE THE U.S. GOVERNMENT HAS A LICENSE TO THE PATENTS WITH <u>"HAVE PRACTICED" RIGHTS</u>

39.     ReadyOne repeats and re-alleges Counterclaim Paragraphs 1 through 38 above as if fully set forth herein.

40.     On May 11, 2001, Crye submitted a proposal, referred to as the "Scorpion Proposal," to the Natick Soldier Center of the U.S. Army in Response to Solicitation Number 01-03 Natick BAA.  A partially redacted true and correct copy of the Scorpion Proposal is provided at Exhibit C hereto.

41.     The Scorpion Proposal states in part that Crye's "objective is to greatly enhance the soldier's ability to fight and survive in the combat environment.  To meet this objective, we proposed to design a revolutionary combat ensemble that integrates current, emerging, and cutting-edge technologies projected for use by 2010."  Ex. C at p. 2.

42.     The Scorpion Proposal also states in part:

> Crye Associates has already designed solutions for many issues that pertain to Scorpion.  These are not finished products, but rather concepts and plans that we have been working on to address needs we perceived in other markets.  We intend to investigate the user of these designs for Scorpion, and, if relevant, we offer them freely to the Scorpion effort.  We will not ask that Scorpion pay to use these technologies.  Our stipulations are simply that once disclosed, our existing inventions can be used only by NSC and Crye Associates, and that if any of these designs are incorporated into items destined for volume manufacture, we are to receive a reasonable royalty or licensing fee on the manufacture thereof.  The clause pertains only to technologies we have already invented.  We will provide the government full access to any new technologies we create once under contract.

See pp. 3-4 of Ex. C.

43.     The Scorpion Proposal has a table at the end with four columns.  The first column is entitled "Technical Data to be furnished with restrictions," and the second column is entitled "Basis for assertion."  See Ex. C at pp. 55-57.

44.     The seventh row of the table states "Integrated/removable joint protection" in the first column and "Privately funded development/patent pending" in the second column.  See Ex. C at p. 57.

45.     On May 11, 2001, the application that eventually issued as the '270 Patent was not pending.

46.     Upon information and belief, on May 11, 2001, Crye had no pending patent applications that disclosed the "garment protective assemblies" claimed in the '270 patent.

47.     On May 11, 2001, the application that eventually issued as the '666 Patent was not pending.

48.     Upon information and belief, on May 11, 2001, Crye had no pending patent applications that disclosed the subject matter claimed in the '666 patent.

49.     On Sept. 26, 2001 the U.S. Army Robert Morris Acquisition Natick Contracting Division of the United States Government, awarded contract DAAD16-01-0061 to Crye ("the 2001 Contract").  A true and correct copy of the 2001 Contract is provided at Exhibit D hereto.

50.     The 2001 Contract states in part that: "All work shall be performed in accordance with Crye Associates proposal entitled 'Scorpion' dated 11 May 2011 ….  The Government hereby accepts this proposal in its entirety unless otherwise revised herein this contract."  See Ex. D at p. 4.

51.     On Sept. 26, 2001, the application that eventually issued as the '270 Patent was not pending.

52.     Upon information and belief, on Sept. 26, 2001, Crye had no pending patent applications that disclosed the "garment protective assemblies" claimed in the '270 Patent.

53.     On Sept. 26, 2001, the application that eventually issued as the '666 Patent was not pending.

54.     Upon information and belief, on Sept. 26, 2001, Crye had no pending patent applications that disclosed the subject matter claimed in the '666 Patent.

55.     The "garment protective assemblies" claimed in the '270 Patent were first reduced to practice in the performance of work under the 2001 Contract.

56.     Upon information and belief, the subject matter claimed in the '666 Patent was first reduced to practice in the performance of work under the 2001 Contract.

57.     Upon information and belief, the subject matter claimed in the '666 patent is closely related to and was conceived as a result of the work and research of Crye funded by the 2001 Contract.

58.     On July 8, 2004, Caleb Clark Crye, Eric Owen Fehlberg and Gregg M. Thompson (collectively "the patent applicants"), through their attorney, David R.J. Stiennon of Stiennon & Stiennon, filed the patent application that eventually led to the '270 Patent.  The application was assigned Serial No. 10/887,342 ("the '342 application").  A true and correct copy of the '342 application as filed is provided as Exhibit E hereto

59.     As filed, paragraph [0002] of the '342 application (Ex. E) stated:

[0002]  The U.S. Government has a paid-up license in this invention and the right in limited circumstances to require the patent owner to license others on reasonable terms as provided by the terms of contract No. DAAD16-01-C-0061 awarded by the US Army Robert Morris Acquisition Natick Contracting Division of the United States Department of Defense.

60.     During the prosecution of the application of the '270 Patent before the United States Patent & Trademark Office ("USPTO"), the attorney for the patent applicants filed an

Information Disclosure Statement on January 13, 2005.  A true and correct copy of the Jan. 13, 2005 Information Disclosure Statement is provided at Exhibit F hereto.

61.     In the Jan. 13, 2005 Information Disclosure Statement (Ex. F), the attorney for the patent applicants stated that: "The invention of this application was developed under U.S. government contract, and in accordance with that contract, the developed invention was disclosed to the government in the form of a prototype which was delivered to the U.S. government prior to the critical date."

62.     The patent applicant never informed the USPTO that the statement made by the patent applicant's attorney in the January 13, 2005 Information Disclosure Statement (Ex. F) quoted above in paragraph 59 is incorrect.

63.     The patent applicant's attorney never informed the USPTO that the statement made by the patent applicant's attorney in the January 13, 2005 Information Disclosure Statement (Ex. F) quoted above in paragraph 59 is incorrect.

64.     Crye never informed the USPTO that the statement made by the patent applicant's attorney in the January 13, 2005 Information Disclosure Statement (Ex. F) quoted above in paragraph 59 is incorrect.

65.     The "garment protective assemblies" claimed in the '270 Patent were first reduced to practice after September 26, 2001.

66.     The application that eventually issued as the '270 Patent was filed on July 8, 2004.

67.     The subject matter claimed in the '666 Patent was first reduced to practice after September 26, 2001

68.     The application that eventually issued as the '666 Patent was filed on September 9, 2010 and claims priority to a single provisional application filed February 4, 2009.

69.     The 2001 Contract includes a section titled "52.227-11 PATENT RIGHTS - RETENTION BY THE CONTRACTOR (SHORT FORM) (JUN 1997)."  See Ex. D at p. 13 (hereinafter the "Patent Rights Clause").

70.     The Patent Rights Clause of the 2001 Contract (Ex. D), in a subsection entitled "Definitions," states in part:  "'Invention' means any invention or discovery which is or may be patentable or otherwise protectable under title 35 of the United States Code, or any novel variety of plant which is or may be protected under the Plant Variety Protection Act (7 U.S.C. 2321, et seq.)."

71.     The subsection entitled "Definitions" of the Patent Rights Clause of the 2001 Contract (Ex. D) states in part: "'Made' when used in relation to any invention means the conception or first actual reduction to practice of such invention."

72.     The subsection entitled "Definitions" of the Patent Rights Clause of the 2001 Contract (Ex. D) states in part: "'Subject invention' means any invention of the contractor conceived or first actually reduced to practice in the performance of work under this contract….."

73.     Subsection (b) of the Patent Rights Clause of the 2001 Contract (Ex. D) states:

(b) Allocation of principal rights.  The Contractor may retain the entire right, title, and interest throughout the world to each subject invention subject to the provisions of this clause and 35 U.S.C. 203.  With respect to any subject invention in which the Contractor retains title, the Federal Government shall have a nonexclusive, nontransferable, irrevocable, paid-up license to practice or have practiced for or on behalf of the United States the subject invention throughout the world.

74.     The Federal Government has a nonexclusive, nontransferable, irrevocable, paid-up license to practice or have practiced for or on behalf of the United States the "garment

protective assemblies" claimed in the '270 Patent because the "garment protective assemblies" claimed in the '270 Patent were first reduced to practice in the performance of work under the 2001 Contract.

75.     To the extent ReadyOne made any garment protective assemblies covered by the '270 Patent for the U.S. Government, the U.S. Government's "have practiced" license rights to the '270 Patent provide lawful authority for ReadyOne to make such garment protective assemblies.

76.     The Federal Government has a nonexclusive, nontransferable, irrevocable, paid-up license to practice or have practiced for or on behalf of the United States the subject matter claimed in the '666 Patent because the subject matter claimed in the '666 Patent were first reduced to practice in the performance of work under the 2001 Contract.

77.     To the extent ReadyOne made any garment protective assemblies covered by the '666 Patent for the U.S. Government, the U.S. Government's "have practiced" license rights to the '666 Patent provide lawful authority for ReadyOne to make such garment protective assemblies.

78.     There is an actual, substantial, and continuing justiciable controversy between ReadyOne and the Counterclaim Defendants regarding whether the U.S. Government has licenses to the '270 Patent and the '666 Patent, both which "have practiced" rights, and whether those "have practiced" license rights of the U.S. Government authorize ReadyOne to practice the '270 and '666 Patents for the U.S. Government.

79.     ReadyOne therefore respectfully requests this Court to enter a declaratory judgment declaring that the ReadyOne does not infringe the '270 and '666 Patents under any provision of 35 U.S.C. § 271 for any articles or garments made by ReadyOne for the U.S.

Government since the U.S. Government has a "nonexclusive, nontransferable, irrevocable, paid-up license to practice or have practiced for or on behalf of the United States the" alleged inventions claimed in the '270 and '666 Patents.

## COUNT IV

### DECLARATORY JUDGMENT OF NO INFRINGEMENT OF THE '270 AND '666 PATENTS

80.     ReadyOne repeats and re-alleges Counterclaim Paragraphs 1 through 79 above as if fully set forth herein.

81.     Counterclaim Defendants allege that they possess the right to sue for infringement and to recover past damages with respect to the '270 and '666 Patents.

82.     ReadyOne does not and has not directly infringed, contributed to the infringement of, induced the infringement of, or otherwise infringed under any provision of 35 U.S.C. § 271 any valid and enforceable claim of the '270 and '666 Patents, either literally or under the doctrine of equivalents.

83.     For example, the claims of the patents-in-suit are directly infringed only when the claimed knee pads are combined with pants with the claimed elements.

84.     When ReadyOne supplies the U.S. Government with the Crye's AirFlex$^{TM}$ knee pads that can be worn with the ACP and "19125" PCU Level 9 combat pants under ReadyOne's Government Contracts, the Crye's AirFlex$^{TM}$ knee pads are separate from --and not inserted into -- the ACP or Style 19125 PCU Level 9 combat pants, as the case may be.

85.     ReadyOne donated 22 PUC Level 9 combat pants to the El Paso SWAT Team in April 2010.  *See* Ex. E and Ex. F of Complaint.

86.     The 22 PUC Level 9 combat pants that ReadyOne donated to the El Paso SWAT Team in April 2010 did not include any knee pads.

87.     Likewise, ReadyOne did not supply kneepads to the El Paso SWAT Team for the 22 PUC Level 9 combat pants that ReadyOne donated to the El Paso SWAT Team in April 2010.

88.     The '270 Patent includes 29 claims, of which claims 1, 15, and 26 are the only independent claims.

89.     Each of claims 1, 15 and 26 recite in part "a protective insert" and "a stiff cap fixed to the protective insert."

90.     Because the 22 PUC Level 9 combat pants that ReadyOne donated to the El Paso SWAT Team in April 2010 did not include any kneepads, the 22 PUC Level 9 combat pants that ReadyOne donated to the El Paso SWAT Team in April 2010 did not include either "a protective insert" or "a stiff cap fixed to the protective insert," as recited in each of independent claims 1, 15 and 26.

91.     A person can wear the PUC Level 9 combat pants that ReadyOne donated to the El Paso SWAT Team in April 2010 without kneepads.

92.     Crye did not provide notice to ReadyOne of the '270 Patent until March 18, 2013. *See* Ex. G of the Complaint.

93.     The application for the '666 Patent was not published in April 2010.

94.     The application for the '666 Patent published on September 9, 2010.

95.     The '666 Patent did not issue until more than three years after ReadyOne donated 22 PUC Level 9 combat pants to the El Paso SWAT Team in April 2010.

96.     There is an actual, substantial, and continuing justiciable controversy between ReadyOne and the Counterclaim Defendants regarding the infringement of any valid and enforceable claims of the '270 and '666 Patents.  The ReadyOne garments accused in the Complaint do not infringe either the '270 or '666 Patents.

97.     ReadyOne therefore respectfully requests this Court to enter a declaratory judgment declaring that ReadyOne does not and has not directly infringed, contributed to the infringement of, induced the infringement of, or otherwise infringed under any provision of 35 U.S.C. § 271 any valid and enforceable claim of the '270 and '666 Patents.

**COUNT V**

**DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '270 PATENT DUE TO INEQUITABLE CONDUCT**

98.     ReadyOne repeats and re-alleges Counterclaim Paragraphs 1 through 97 above as if fully set forth herein.

99.     The U.S. Army Robert Morris Acquisition Natick Contracting Division of the United States Department of Defense awarded contract No. DAAD16-01-C-0061 to Crye on Sept. 26, 2001.

100.    Mr. Caleb Crye, one of the named inventors for the '270 Patent, signed the Scorpion proposal on behalf of Crye on September 20, 2001.  See Ex. C at 54.

101.    Mr. Stiennon (see para. 58 above), the patent attorney for the patent applicants of the '270 patent, made the following statements in the Jan. 2005 Information Disclosure Statement (Ex. F):

> (a)     "The critical date for purposes of this application is one year prior to the application date of Jul. 8, 2004, or Jul. 8, 2003."

> (b)     "The invention of this application was developed under US government contract, and in accordance with that contract, the developed invention was disclosed to the government in the form of a prototype which was delivered to the US government prior to the critical date."

(c)     "A prototype garment incorporating the garment protective assembly of this application was displayed by the government on a human model at an Association of the United States Army (AUSA) show prior to the critical date."

(d)     "The display of the prototype garment was carried out by the government for governmental purposes, not by the inventor or assignee for commercial purposes."

102.    The patent applicants and their attorney did not provide a copy of the "US government contract" referred to in paragraph 99(b) above to the USPTO.

103.    The "US government contract" referred to in Ex. F is the U.S. government contract attached hereto as Ex. D.

104.    Prior to July 8, 2003, a prototype garment incorporating the garment protective assembly claimed in the '270 patent "was displayed by the [United States] government on a human model at an Association of the United States Army (AUSA) show…."

105.    A public disclosure of the prototype of the invention of the '270 Patent to the U.S. government prior to the critical date of July 8, 2003 invalidates the claims of the '270 Patent under 35 U.S.C. § 102(b) (pre-AIA) and/or 35 U.S.C. § 103(a) (pre-AIA).

106.    A public disclosure of "[a] prototype garment incorporating the garment protective assembly of [the '342] application … at an Association of the United States Army (AUSA) show prior to the critical date" of July 8, 2003 invalidates the claims of the '270 Patent under 35 U.S.C. § 102(b) (pre-AIA) and/or 35 U.S.C. § 103(a) (pre-AIA).

107.    On May 26, 2006, the patent applicants' attorney, David R. J. Stiennon, filed an Information Disclosure Statement ("the May 2006 Information Disclosure Statement") with the

United States Patent and Trademark Office.  A true and correct copy of the May 2006

Information Disclosure Statement is provided at Exhibit G hereto.

108.    In the May 2006 Information Disclosure Statement, the patent applicants'

attorney, David R. J. Stiennon, made the following statement:

**Display of video of prototype garment incorporating the invention at a show and in NATICK office**

In addition to the display of the prototype garment disclosed in the Information Disclosure Statement of January 13, 2005, a video of a model wearing the suit was shown at the AUSA show prior to the critical date.  In addition, prior to the critical date, a prototype suit was displayed within a case at the offices of the Natick Soldier Center, in Natick Massachusetts.  For the same reasons set out with respect to the displays at the AUSA show, the video and the suit in a display case were not enabling and were not for commercial purposes.

See Ex. G at 2.

109.    Prior to July 8, 2003, a video of a model wearing a prototype protective garment

incorporating the garment protective assembly claimed in the '270 patent was shown at an

AUSA show.

110.    Prior to July 8, 2003, a prototype suit incorporating the garment protective

assembly claimed in the '270 patent was displayed in a case at the offices of the Natick Soldier

Center in Natick, Massachusetts.

111.    A public disclosure prior to July 8, 2003 of "a video of a model wearing" the

claimed "garment protective assemblies" of the '270 patent invalidates the claims of the '270

Patent under 35 U.S.C. § 102(b) (pre-AIA) and/or 35 U.S.C. § 103(a) (pre-AIA).

112.    A public disclosure prior to July 8, 2003 of a "prototype suit … within a case at

the offices of the Natick Soldier Center, in Natick Massachusetts" having the claimed "garment

protective assemblies" of the '270 patent invalidates the claims of the '270 Patent under 35

U.S.C. § 102(b) (pre-AIA) and/or 35 U.S.C. § 103(a) (pre-AIA).

113. The '270 Patent issued on July 3, 2007.

114. As issued on July 3, 2007, lines 4-14 of col. 1 of the '270 Patent stated:

> STATEMENT AS TO RIGHTS TO INVENTIONS
> MADE UNDER FEDERALLY SPONSORED    5
> RESEARCH AND DEVELOPMENT
>
> The U.S. Government has a paid-up license in this inven-
> tion and the right in limited circumstances to require the
> patent owner to license others on reasonable terms as  10
> provided for by the terms of contract No. DAAD 16-01-C-
> 0061 awarded by the US Army Robert Morris Acquisition
> Natick Contracting Division of the United States Depart-
> ment of Defense.

115. On June 20, 2008, another attorney for the patent applicants, Eileen M. Ebel of Bryan Cave LLP, filed a "Request for Certificate of Correction" for the '270 Patent.

116. A true and correct copy of the June 20, 2008 "Request for Certificate of Correction" for the '270 Patent is provided at Exhibit H hereto.

117. In the June 20, 2008 "Request for Certificate of Correction" for the '270 Patent, the patent applicants' attorney, Eileen Ebel, requested that the USPTO delete lines 4-14 of the col. 1 of the '270 Patent.

118. In the June 20, 2008 "Request for Certificate of Correction" for the '270 Patent, the patent applicants' attorney, Eileen Ebel, stated: "The inclusion of the Statement (lines 4-14) was a clerical mistake, which is of a minor character. Correction of this mistake is not believed to alter the scope of the claims." See Ex. H at pp. 1-2.

119. The June 20, 2008 "Request for Certificate of Correction" for the '270 Patent did not inform the USPTO that in the Jan. 2005 Information Disclosure Statement (Ex. F), another of the patent applicants' attorneys stated to the USPTO that: "The invention of this application was

developed under US government contact, and in accordance with that contact, the developed invention was disclosed to the government in the form of a prototype which was delivered to the US government prior to the critical date."

120.    Neither the patent applicants nor their attorneys retracted the statement to the USPTO in the Jan. 2005 Information Disclosure Statement (Ex. F) that: "The invention of this application was developed under US government contract, and in accordance with that contract, the developed invention was disclosed to the government in the form of a prototype which was delivered to the US government prior to the critical date."

121.    But for the patent applicants' patent attorney informing the USPTO in the Jan. 2005 Information Disclosure Statement (Ex. F) that the "invention of this application was developed under US government contact," the USPTO would have rejected the claims of the '270 Patent under 35 U.S.C. § 102(b) (pre-AIA) and/or 35 U.S.C. § 103(a) (pre-AIA) based on the prototype "delivered to the US government prior to the critical date."

122.    But for the patent applicants' patent attorney informing the USPTO in the Jan. 2005 Information Disclosure Statement (Ex. F) that the "prototype garment incorporating the garment protective assembly of [the '342] application" displayed at the AUSA show prior to the critical date was "by the government for governmental purposes," the USPTO would have rejected the claims of the '270 Patent under 35 U.S.C. § 102(b) (pre-AIA) and/or 35 U.S.C. § 103(a) (pre-AIA) based on the display and video at the AUSA show prior to July 8, 2003.

123.    But for the patent applicants' patent attorney informing the USPTO in the Jan. 2005 Information Disclosure Statement (Ex. F) that the "prototype garment incorporating the garment protective assembly of [the '342] application" displayed at the AUSA show prior to the critical date was "by the government for governmental purposes," the USPTO would have

rejected the claims of the '270 Patent under 35 U.S.C. § 102(b) (pre-AIA) and/or 35 U.S.C.

§ 103(a) (pre-AIA) based on the "prototype suit … displayed within a case at the offices of the

Natick Soldier Center, in Natick Massachusetts" prior to July 8, 2003 (see Ex. G).

124.    The patent applicants and/or their attorneys intended to deceive the USPTO in

order to obtain the '270 Patent by implementing a plan that included:

> (a)    Initially claiming that the invention of the '270 Patent was "developed
>
> under US government contract" (see Ex. F; see also Ex. E);
>
> (b)    Using the U.S. government contract to shield the invalidating nature of the
>
> prototypes of the invention furnished by Crye to the U.S. government prior to the
>
> critical date and the displays of the prototypes at the AUSA show prior to the
>
> critical date (see Ex. F and Ex. G); and
>
> (c)    After the '270 Patent issued, revoking the statement in the '270 Patent that
>
> the government has a license to the patent under a contract awarded by the
>
> government (see Ex. H).

125.    To the extent the Counterclaim Defendants assert that the '270 patent was not

made under a government contract, the Counterclaim Defendants intentionally misled and

deceived the USPTO by initially asserting that the '270 patent was made under a government

contract to avoid the invalidating nature of the Counterclaim Defendants' conduct with the

Army, including the public displays and videos of the invention of the '270 patent at the AUSA

show and Natick Soldier Center prior to July 8, 2003.

126.    There is no other reasonable explanation for the deceptive conduct of the patent

applicants' and/or their attorneys.

127.    The excuse that the statements by the patent applicants and/or their attorneys (i) that the invention of the '270 Patent was "developed under US government contract" and (ii) that the "U.S. Government has a paid-up license in this invention [of the '270 Patent] … as provided for by the terms of" a contract with the U.S. Department of Defense, were "clerical mistakes" is not reasonable in light of the precision and clarity of the statements, and the knowledge that the patent applicants and their attorneys had about that U.S. government contract.

128.    There is an actual, substantial, and continuing justiciable controversy between ReadyOne and the Counterclaim Defendants regarding the enforceability of the '270 Patent due to the Counterclaim Defendants' inequitable conduct.  The Counterclaim Defendants intended to deceive the USPTO, and but for their deception, the USPTO would not have granted the '270 Patent.

129.    ReadyOne therefore respectfully requests this Court to enter a declaratory judgment declaring that the '270 Patent is unenforceable due to inequitable conduct.

## PRAYER FOR RELIEF

WHEREFORE, Defendant ReadyOne respectfully requests the following relief:

(a)    That the Complaint be dismissed with prejudice and that each request for relief therein be denied;

(b)    That the patents-in-suit, and each and every asserted claim thereof that is valid and enforceable, are not infringed because, among other things, the purchase of kneepads from Crye exhausts the patents;

(c)    That the Court dismiss with prejudice Plaintiffs' claims against Defendant under 28 U.S.C. § 1498 for any and all accused products made for, sold or offered for sale to, or otherwise practicing the patents in suit for or on behalf of the United States Government;

(d)     That the '270 Patent is unenforceable due to inequitable conduct;

(e)     That this is an exceptional case under 35 U.S.C. § 285 and that ReadyOne be awarded the attorneys' fees, costs and expenses that it incurs in connection with Plaintiffs' claims;

(f)     That judgment be entered for Defendant and against Plaintiffs on all claims of Plaintiffs' Complaint; and

(g)     That the Court grant such further and other relief as it deems just and proper.

## <u>DEMAND FOR A JURY TRIAL</u>

ReadyOne demands a trial by jury of all issues so triable.

Dated:  January 28, 2015                              Respectfully submitted,

_____/s/_____
Eric C. Rusnak (VA Bar #65895)
K&L GATES LLP
1601 K Street, NW
Washington, DC 20006
Telephone: (202) 778-9000
Facsimile: (202) 778-9100
eric.rusnak@klgates.com

*Attorney for Defendant*
*ReadyOne Industries, Inc.*

*Of Counsel:*
Patrick J. McElhinny Pa. I.D. # 53510
patrick.mcelhinny@klgates.com
Mark Knedeisen Pa. I.D. #82489
mark.knedeisen@klgates.com
Eliza Hall Pa. I.D. # 205508
eliza.hall@klgates.com
K&L Gates LLP
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500

*Attorneys for Defendant*
*ReadyOne Industries, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent via first class mail to non registered participants on this 28th day of January, 2015.

_____/s/ _____
Eric C. Rusnak (VA Bar #65895)
**K&L GATES LLP**
1601 K Street, NW
Washington, DC 20006
Telephone: (202) 778-9000
Facsimile: (202) 778-9100
eric.rusnak@klgates.com

*Attorney for Defendant*
*ReadyOne Industries, Inc.*